STATE OF WEST VIRGINIA

FILED

November 10, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LARRY BEDILION,**
**Claimant Below, Petitioner**

**vs.)   No. 13-0877** (BOR Appeal Nos. 2047559, 2047568, 2047742,
2047791, 2048219)
(Claim No. 2012016649)

**CONSOLIDATION COAL COMPANY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Larry Bedilion, by Robert L. Stultz, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Consolidation Coal Company, by James W. Heslep and Gary W. Nickerson, its attorneys, filed a timely response.

This appeal arises from the Board of Review's Final Order dated August 2, 2013, in which the Board affirmed a July 31, 2012, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's December 14, 2011, decision, which held the claim compensable for neck sprain and excluded the diagnosis of loss of consciousness. The Board of Review also affirmed a July 31, 2012, Order of the Workers' Compensation Office of Judges, which affirmed the claims administrator's January 24, 2012, decision closing the claim for temporary total disability benefits. The Board of Review also affirmed a September 20, 2012, Order of the Workers' Compensation Office of Judges, which affirmed the claims administrator's April 5, 2012, decision denying authorization for cervical surgery. The Board of Review also affirmed an October 19, 2012, Order of the Workers' Compensation Office of Judges, which affirmed the claims administrator's April 11, 2012, decision denying a petition to reopen the claim for temporary total disability benefits. The Board of Review also affirmed a March 5, 2013, Order of the Workers' Compensation Office of Judges, which affirmed the claims administrator's March 29, 2012, decisions holding the claim compensable for neck sprain and excluding the diagnoses of cervical disc displacement, cervicalgia, displacement of lumbar intervertebral disc without myelopathy, unspecified chest pain, and other musculoskeletal symptoms referable to the limbs. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Bedilion, a coal miner, was injured in the course of his employment on October 6, 2011, when he walked into a roof strap. The claim was held compensable for cervical strain. An incident report dated October 6, 2012, indicates Mr. Bedilion was knocked onto his back after he hit his head. He cut his nose and had pain in his right ribs, neck, and shoulder. There was no mention of loss of consciousness. He was not seen by a physician and continued to work. His supervisor's injury report from the date of the injury states that Mr. Bedilion hit his head on a roof strap and was knocked onto his back. He did not seek medical treatment and there was no mention of loss of consciousness.

Mr. Bedilion first sought medical treatment approximately one month after the compensable injury occurred. On November 2, 2011, he was treated at Ruby Memorial Hospital by Megan Kirch, M.D. He reported headaches, neck pain, fatigue, confusion, blurred vision, and right anterior chest wall pain following a work-related injury one month prior. He asserted that he lost consciousness, but he did not seek medical attention. A CT of the head was normal. A cervical CT showed no acute traumatic injury to the spine, advanced multi-level degenerative changes with moderate central canal stenosis at C6-7, and severe left neural foraminal narrowing. Mr. Bedilion reported that he had chronic neck pain from a previous motor vehicle accident. Dr. Kirch diagnosed multiple neurologic symptoms with supporting physical exam findings for intracranial hemorrhage, ischemia, degenerative neurologic disease, or post-concussive syndrome. A consultation with neurology was arranged, but Mr. Bedilion stated that he had to leave the hospital immediately due to a family emergency. Mr. Bedilion was also treated that day by William Dickey, M.D., who initiated a neurological consultation, but Mr. Bedilion stated that he had to leave to go to work and was discharged against medical advice.

Mr. Bedilion was treated by John Martin, D.O., on November 6, 2011. Dr. Martin stated that he complained of neck, head, back, and leg pain. He was referred to a neurosurgeon. By November 13, 2011, Mr. Bedilion had developed severe neck pain and surgery was recommended. No mention was made of Mr. Bedilion's visit to Ruby Memorial Hospital or the cognitive symptoms he reported that day. Michael Oh, M.D., performed a neurological consultation on November 23, 2011. Mr. Bedilion reported significant neck pain and right lower extremity pain. A cervical MRI showed severe cervical stenosis at C3-4 with intrinsic cord changes on the right side. He also had stenosis from C4 to C7 with a left-sided disc herniation at C6-7. Dr. Oh opined that he had pre-existing cervical stenosis that was aggravated by his work-related injury. He recommended fusion from C3 to C7. A second opinion was obtained on December 9, 2011 from Francis Ferraro, M.D. Dr. Ferraro stated in his treatment note that he previously operated on Mr. Bedilion for a lumbar disc herniation. He reported that he developed

2

pain in his neck, right side of his chest, lower back, and lower extremity following a work-related injury. Dr. Ferraro deferred an opinion on surgery pending spinal CT scans.

A record review was completed by Christopher Martin, M.D., on January 13, 2012. Dr. Christopher Martin noted that there were several sources of conflicting information in this case. Mr. Bedilion reported loss of consciousness following the injury, however, witnesses stated that he did not lose consciousness. When he presented to Ruby Memorial Hospital's emergency room his main complaint was cognitive dysfunction. When he was treated by John Martin, D.O., three days later he reported that his main problem was neck and back pain. Further, Mr. Bedilion did not seek treatment for one month following the work-related injury. Dr. John Martin found this to be inconsistent with significant trauma to either the cervical spine or head. Significant symptoms would have developed much faster and required treatment. Mr. Bedilion also had a history of poor compliance. He left the emergency room before a neurological consultation could be performed and it is unclear why he left. He failed to follow up as recommended and did not report his symptoms on the day of injury to Dr. John Martin when he next saw him. Dr. Christopher Martin opined that Mr. Bedilion did not suffer a closed head injury on the date of the work-related injury. There is no corroborating information to support a loss of consciousness, he did not miss any work, he did not seek treatment for approximately one month, and imaging studies of the brain were normal. Dr. John Martin also opined that Mr. Bedilion sustained a cervical strain as a result of his compensable injury from which he has fully recovered. Further, he stated that the degenerative changes are in no way related to the compensable injury and the requested surgery is solely for the treatment of the pre-existing condition. The work-related accident did not aggravate the pre-existing degenerative changes as evidenced by the fact that Mr. Bedilion did not seek treatment for over one month.

Dr. John Martin opined in a February 24, 2012, letter that, although Mr. Bedilion had significant pre-existing degenerative disc disease, his current symptoms did not develop until his work-related injury. He requested the addition of cervical disc displacement, cervicalgia, unspecified chest pain, displacement of lumbar intervertebral disc without myelopathy, and other musculoskeletal symptoms referable to the limbs to the claim. Dr. Ferraro agreed in an April of 2012 treatment note that Mr. Bedilion's symptoms were the result of an aggravation of his pre-existing, previously asymptomatic cervical spondylitic disease.

A total spine myelogram and postmyelogram CT performed in April of 2012 revealed a large central and right-sided osteophyte disc complex at C3-4 causing compression of the right side of the spinal cord as well as significant right C3-4 foraminal narrowing. There was also a disc bulge at C4-5 indenting the thecal sac. There was a central and right-sided disc herniation osteophyte complex at C5-6 causing some spinal cord compression and compromise of the neural foramen. Lastly, there was a large osteophyte on the left side at C6-7 with compression.

In a July 31, 2012, Order, the Office of Judges affirmed the claims administrator's December 14, 2011, decision holding the claim compensable for neck sprain and excluding as a compensable diagnosis concussion with loss of consciousness. The Office of Judges determined that a preponderance of the evidence did not support the addition of additional diagnoses to the claim. The Office of Judges found that Mr. Bedilion did not mention loss of consciousness in the

3

mine injury report, dated October 6, 2011. His supervisor also failed to mention loss of consciousness in his report. Further, Mr. Bedilion finished his shift the day of the compensable injury and did not seek treatment for approximately one month. In his November 2, 2011, visit to Ruby Memorial Hospital, Mr. Bedilion reported cognitive problems and blurred vision. Mr. Bedilion, however, did not mention any cognitive problems or blurred vision as he reported at Ruby Memorial Hospital in his treatment with Dr. John Martin, Dr. Oh, and Dr. Ferraro. The Office of Judges also found that Mr. Bedilion's severe degenerative spine changes were unrelated to his compensable injury.

In a July 31, 2012, Order, the Office of Judges affirmed the claims administrator's January 24, 2012, decision closing the claim for temporary total disability benefits. The Office of Judges found that the only compensable condition in the claim was cervical sprain and the claim was closed for temporary total disability benefits because there was no evidence that Mr. Bedilion was disabled for more than three days. He finished his shift the day of the injury and continued to work until November 1, 2011. The Office of Judges stated that Dr. Christopher Martin opined that it was highly unlikely that Mr. Bedilion could have continued work for another month if his work-related injury aggravated his pre-existing severe degenerative spine condition. The Office of Judges noted that when Mr. Bedilion first sought medical treatment at Ruby Memorial Hospital, he complained of cognitive problems, blurred vision, and confusion. Further, he discharged himself from the hospital against medical advice and gave two different excuses for doing so. Mr. Bedilion failed to follow up with the neurological consultation arranged for him because he alleges the neurologist's office did not accept workers' compensation. However, the Office of Judges found that the neurologist was at Ruby Memorial Hospital, where Mr. Bedilion had already been treated for his workers' compensation claim. Dr. Christopher Martin was unable to find any indication in the medical records as to why the follow-up was cancelled. The Office of Judges determined that it was not certain that Mr. Bedilion lost consciousness at the time of his compensable injury because there were conflicting accounts of the injury. Further, the Office of Judges found his assertion that he delayed seeking treatment because he was the only person able to perform his job at that time to be questionable. With regard to Mr. Bedilion's degenerative changes, the Office of Judges determined that they were in no way attributable to the compensable injury. Lastly, Mr. Bedilion did not report any of the symptoms he alleged at Ruby Memorial Hospital on November 2, 2011, to any of his subsequent doctors. The Office of Judges determined that the events that caused him to seek treatment at Ruby Memorial Hospital that day could not be attributed to the work-related injury that occurred nearly a month prior. Therefore, the claim was properly closed for temporary total disability benefits.

In a September 20, 2012, Order, the Office of Judges affirmed the claims administrator's April 5, 2012, decision denying authorization for cervical surgery because the condition for which the surgery was requested was degenerative in nature. The Office of Judges found that previous Office of Judges' decisions already determined that the only compensable condition in the claim was cervical sprain. The addition of other conditions to the claim was denied. The Office of Judges stated that Dr. Christopher Martin opined that it was highly unlikely that Mr. Bedilion could have continued to work for another month if his work-related injury aggravated his pre-existing severe degenerative spine condition. Further, it was determined that the

degenerative changes were clearly not attributable to his work-related injury. The degenerative changes were determined by radiologists to be severe in nature, causing encroachment on the spinal cord and nerves. Dr. Oh also found that the degenerative changes were so severe that they were already causing encroachment. Dr. Ferraro concurred. The Office of Judges held that the need for spinal surgery was due entirely to Mr. Bedilion's non-compensable, pre-existing degenerative condition.

In an October 19, 2012, Order, the Office of Judges affirmed the claims administrator's April 11, 2012, decision denying Mr. Bedilion's request for a reopening of his claim for temporary total disability benefits. The Office of Judges found that Mr. Bedilion was denied temporary total disability benefits for the compensable injury in a July 31, 2012, Office of Judges' Order. In the instant case, he failed to introduce any new evidence to show a progression or aggravation of his compensable cervical sprain. The Office of Judges therefore found that res judicata applied and denied Mr. Bedilion's request for a reopening of his claim for temporary total disability benefits.

In a March 5, 2013, Order, the Office of Judges affirmed the claims administrator's March 29, 2012, decision holding the claim compensable for neck sprain and excluding the diagnosis of cervicalgia. In its Order, the Office of Judges also affirmed the claims administrator's March 29, 2012, decision again holding the claim compensable for neck sprain and excluding the diagnoses of cervical disc displacement, displacement of lumbar intervertebral disc without myelopathy, unspecified chest pain, and other musculoskeletal symptoms referable to the limbs. The Office of Judges determined that cervicalgia is simply a pain code and neck pain would be included in the compensable diagnosis of neck sprain. Further, it has been repeatedly found that cervical disc displacement as well as other cervical conditions, excluding cervical sprain, were pre-existing and therefore not compensable. The Office of Judges noted that Mr. Bedilion suffered a neck injury in 2008 for which he underwent a CT scan that revealed severe degenerative changes. The Office of Judges determined that his degenerative changes are not attributable to his compensable injury. They were described by radiologists as severe in nature, causing encroachment on the spinal cord and nerves. Drs. Oh and Ferraro concurred.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Orders in its August 2, 2013, decision. This Court agrees with the reasoning of the Office of Judges and the conclusions of the Board of Review. The evidentiary record indicates that the only condition Mr. Bedilion sustained as a result of his compensable October 6, 2011, injury was a cervical sprain. He missed no work as a result of the injury and is therefore not entitled to temporary total disability benefits. Because the requested cervical surgery is for the treatment of pre-existing degenerative conditions, it cannot be authorized.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  November 10, 2014**

**CONCURRED IN BY:**
Chief Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**
Justice Menis E. Ketchum